**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 0:24-cv-61886-JB**

XYZ CORPORATION,

      Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

      Defendants.

---

## THE ALIVER DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS

      The eighteen Aliver Defendants [DE 42], pursuant to 17 U.S.C. § 505, Rule 54, and Local R. 7.3, move for an award of their attorney's fees and costs in their successful defense against plaintiff's claim of copyright infringement.

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... 2

INTRODUCTION ............................................................................................... 3

ARGUMENT ..................................................................................................... 3

    I.    THE COPYRIGHT ACT, 17 U.S.C. § 505 PROVIDES FOR ATTORNEY'S FEES TO THE DEFENDANTS AS THE PREVAILING PARTIES ................. 3

        A.    The Aliver Defendants are prevailing parties ......................................... 5

            1.    *The Supreme Court has drawn a distinction between its prevailing plaintiff cases and prevailing defendant cases* ..................... 5

            2.    *The CRST prevailing defendant standard* ............................ 7

            3.    *Defendants are the prevailing parties because plaintiff left court emptyhanded* ............................................................ 8

        B.    The Copyright Act's purposes are served by awarding the defendants their attorney's fees ............................................................ 10

            1.    *Degree of success* ........................................................... 11

            2.    *Frivolousness* ................................................................. 12

            3.    *Motivation* ..................................................................... 13

            4.    *Objective unreasonableness* ............................................. 15

            5.    *Compensation and deterrence* .......................................... 15

    II.    DEFENDANTS' FEES ARE REASONABLE .......................................... 17

        A.    The lodestar calculation .................................................................. 17

        B.    Defendants' fees ............................................................................ 18

            1.    *Reasonable hourly rate* .................................................... 19

             2.    *The timekeepers' requested hours, and each task undertaken by the timekeeper during those hours* ................................. 19

            3.    *Lead counsel's verification.* ............................................... 19

CONCLUSION ................................................................................................ 19

REQUEST FOR HEARING .............................................................................. 21

LOCAL RULE 7.3(A)(7) VERIFICATION ......................................................... 21

LOCAL RULE 7.3(A)(8) CONFERRAL CERTIFICATION ................................... 21

LOCAL RULE 7.3(B) CERTIFICATE OF SERVICE OF DRAFT MOTION ............ 22

LOCAL RULE 7.3 CROSS-REFERENCE LIST ................................................. 23

## INTRODUCTION

This copyright infringement action against the Aliver Defendants ended upon plaintiff Shenzhen Tinpod Electronic Technology Co., Ltd.'s ("Tinpod") voluntary dismissal with prejudice, without a settlement. Tinpod threw in the towel because it knew it could not win. The Aliver Defendants fully resisted the plaintiff's efforts, making clear that they were the true copyright owners, and that plaintiff's unpublished work could never have been infringed without any purported access.

The suit's end constitutes a judgment of *retraxit*, a preclusive "judgment against [the] plaintiff." 2 Abraham Clark Freeman, A Treatise on the Law of Judgments, Including All Final Determinations of the Rights of Parties in Actions or Proceedings at Law or in Equity § 751, at 1580 (Edward W. Tuttle, ed., 5th ed. 1925); id. at § 9 (a *retraxit* is an open voluntary renunciation of [the plaintiff's] claim in court"). The Aliver Defendants, which came to court with different objectives and different possible outcomes this action compared to plaintiff Tinpod, enjoy a strong presumption of being awarded their attorney's fees, just as plaintiffs are routinely awarded their fees on default judgments.

## ARGUMENT

I.     <u>THE COPYRIGHT ACT, 17 U.S.C. § 505 PROVIDES FOR ATTORNEY'S FEES TO THE DEFENDANTS AS THE PREVAILING PARTIES</u>

In infringement disputes, "most courts have observed that '[attorney fees] are the rule rather than the exception and should be awarded routinely.'" <u>Arista Records, Inc. v. Beker Enters., Inc.</u>, 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003). As concerns "prevailing defendants in copyright cases [they] are presumptively entitled (and strongly so) to recover attorney fees" because there is an "asymmetric recover[y]" between plaintiffs and defendants. <u>Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.</u>, 77 F.4th 630, 632 (7th

Cir. 2023). In contrast to a plaintiff that stands to gain compensation for alleged infringement (in addition to its attorney fees), "[t]he best [a defendant] can hope for is to break even—to recover his attorney's fees" as sunk costs of a lawsuit that it did not choose to initiate. Id. "[T]he only preconditions to an award of fees [are] that the party receiving the fee be the 'prevailing party' and that the fee be reasonable." MiTek Holdings, Inc. v. Arce Engineering Co., Inc., 198 F.3d 840, 842 (11th Cir. 1999) (quoting Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 832 (11th Cir. 1982)). Crucially, a party's good faith in bringing suit is "not determinative of the issue of attorney's fees." Id. (citing Sherry Mfg. Co. v. Towel King of Fla., Inc., 822 F.2d 1031, 1034 (11th Cir. 1987)).

In the first step of a fee award, a legal basis for an award must exist, such as by statute or contract that would vary the American rule. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Here, the Copyright Act allows for "the recovery of full costs" as well as "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Therefore, the threshold determination is whether the defendant is considered "prevailing" in "the first part of the fee-shifting inquiry." CRST Van Expedited, Inc. v. EEOC, 578 U.S. 419 (2016).

The second part of the analysis looks to the relevant statute for the circumstances under which an award should be made to the prevailing party. In copyright cases, a number of non-exclusive factors "inform a court's fee-shifting decisions," including "'frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'" Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1985 (2016). "In copyright cases, 'although

attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely.'" Arista Records, Inc. v. Beker Enters., Inc., 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003); cf. also Affordable Aerial Photography, Inc. v. Win Capital, LLC, no. 1:21-cv-22671-JEM/Becerra, 2022 WL 4000743 at *5 (S.D. Fla. Aug. 5, 2022) (awarding fees to "penal[ty]" on a default judgment to "deter future" misconduct and "ensure that all" parties in a copyright dispute "will have equal access to the court").

The third part of the analysis concerns the scope of fees awardable, calculated based on the lodestar method. E.g., Win Capital, 2022 WL 4000743 at *5-7.

## A. The Aliver Defendants are prevailing parties

1. *The Supreme Court has drawn a distinction between its prevailing plaintiff cases and prevailing defendant cases*

As a threshold matter, the Supreme Court's recent decision in Lackey v. Stinnie, 145 S.Ct. 659 (2025) is key to understanding what decisions guide this Court's analysis in the first part of the analysis to determine whether the defendants prevailed.[1] There, it

---

[1] After the Court had granted certiorari in Lackey and while it was pending on the merits, the undersigned was counsel of record in a separate petition for writ of certiorari that raised the question of whether a copyright infringement defendant was considered the prevailing party where the plaintiff had obtained a Rule 41(a)(2) dismissal *without* prejudice. See Abdelsayed v. Affordable Aerial Photography, Inc., no. 24-267. In that petition, the defendants repeatedly warned the Court that Lackey had a significant potential to be misunderstood, as the Court's Buckhannon decision had been, and urged the Court to provide litigants with "[m]ore precise guidance" to reduce "the drift away from historic, commonsense understanding of what it means for a defendant to prevail." Pet. at 2-3 (citing CRST). Petitioners also cautioned that the "ongoing lack of appreciation for the 'different objectives' of the various types of litigants" in the lower courts had sown confusion, with a stern warning that "a decision in Lackey could easily be misread and misapplied by courts if not thoughtfully counterbalanced by an explicitly defendant-framed decision on preclusive judgments." Pet. at 30. The Lackey footnote is a direct product of the arguments advanced in the Abdelsayed petition, even though the Court denied certiorari there.

clarified that a "different body of caselaw" exists which "addresses when a *defendant* is a 'prevailing party' for the purposes of [] fee-shifting statutes." Id. at 669, n.* (emphasis in original). That footnote instructs lower courts that the Supreme Court's prevailing *plaintiff* jurisprudence is distinct from its prevailing *defendant* jurisprudence—particularly given the emphasis it placed on the distinction between the parties. Cf. id. In support, it cited one case: CRST. Id. CRST is the *only* decision in which the high Court addressed what it means for a defendant to prevail. The Court signaled that CRST stood apart from the Court's prevailing plaintiff jurisprudence when it said it "has not articulated a precise test for when a defendant is a prevailing party" and implying that lower courts should not conflate the two. CRST, 578 U.S. at 422. The recent footnote in Lackey now makes that point explicitly: CRST is a "different body of caselaw." Lackey, 145 S.Ct. at 669.

As it had done in CRST, it re-emphasized in Lackey that "[p]laintiffs and defendants come to court with different objectives," id. (quoting CRST), as the Seventh Circuit acknowledges respecting fee awards, e.g., Live Face, 77 F.4th at 632 (plaintiffs and defendants have "asymmetric recoveries"). "A *plaintiff* prevails … when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Lefemine v. Wideman, 568 U.S. 1, 4 (2012) (emphasis added). In contrast, "[a] defendant seeks to prevent this alteration." CRST, 578 U.S. at 431.

CRST controls the Court's analysis. And the Lackey footnote indicates that decisions which have utilized a prevailing plaintiff standard for a prevailing defendant analysis are incorrect. Nevertheless, those decisions are not controlling here, where the Aliver Defendants successfully rebuffed the plaintiff's effort of seeking a preliminary

injunction, and entirely prevailed—with preclusive effect—against its claim of copyright infringement.

   2. *The CRST prevailing defendant standard*

Courts have misread and misapplied <u>CRST</u>. They have done so by citing the dicta of Section I of <u>CRST</u> while overlooking the Court's rationale and holding found in Section III. In so doing, they conflate the rule for prevailing plaintiffs with the standard for prevailing defendants. That is error.

The structure of <u>CRST</u> illuminates not only its holding, but its rationale, as well as what portions are dictum. <u>CRST</u> is divided into three sections, with the third having two subsections. <u>CRST</u>, 578 U.S. 419. Section I provides background and context for what came prior to <u>CRST</u>. <u>Id.</u> at 421-23. It is not the Court's holding or rationale, but wholly dicta. Bryan A. Garner et al., The Law of Judicial Precedent, § 4 (2016).[2] Tellingly, the Court used subtle rhetorical cues to reinforce Section I is dicta: "The Court has said" and "The Court has explained." <u>CRST</u>, 578 U.S. at 422. Notably, the decisions cited in Section I are all prevailing *plaintiff* cases, which <u>Lackey</u> instructs are a different body of caselaw.[3] The Court also noted the novelty of the issue; that it "has not articulated a precise test for when a defendant is a prevailing party." <u>Id.</u> at 422. Section II then simply recounts the

---

[2] By way of illustration, Garner identifies a "statement of law" in an example opinion that is dicta, which he states should be "readily identifiable as such, at least to someone with a modicum of legal training." Garner, The Law of Judicial Precedent, § 4, 49-50. So too here with respect to Section I of <u>CRST</u>, the entirety of which is dicta. Indeed, the entirety of Section I could be deleted without impairing the Court's rationale and holding in Section III.

[3] The four cases it cited were: <u>Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Res.</u>, 532 U.S. 598 (2001); <u>Tex. State Teachers Ass'n v. Garland Independent Sch. Dist.</u>, 489 U.S. 782 (1989); <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983); and <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412 (1978).

facts and procedural history. Section III provides the Court's analysis and holding: "This Court … **now holds** that a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.'" Id. at 431 (emphasis supplied). Its temporal statement, "now holds" further reinforces its prior observation that it had "not articulated a precise test for when a defendant" prevails.

CRST, together with historical understanding of what prevailing party means, shows that no enduring material alteration of the legal relationship between the parties is needed for a *defendant* to prevail. Nor is judicial "imprimatur." Prevailing defendants need not satisfy the Buckhannon (plaintiff) standard; they must instead satisfy the CRST (defendant) standard of whether the "plaintiff's challenge is rebuffed." CRST, 578 U.S. at 431. That holding is reinforced not only by "[c]ommon sense," id., but by historical understanding of what it meant for a defendant to prevail.

There were seven possible outcomes of a suit in which the defendant prevailed: "Every judgment against a plaintiff is either upon a *retraxit*, *non prosequitur*, nonsuit, *nolle prosequi*, discontinuance, or a judgment on an issue found by jury in favor of defendant, or upon demurrer." Freeman, A Treatise on the Law of Judgments, § 751 at 1580; see also Restatement (Second) of Judgments, § 20 (1982) (a judgment for the defendant occurs "[w]hen the plaintiff agrees to or elects a nonsuit (or voluntary dismissal) without prejudice"). Here, plaintiff Tinpod received a take nothing judgment. It clearly did not prevail, while the defendants unmistakably did.

*3. Defendants are the prevailing parties because plaintiff left court emptyhanded*

Besides the dismissal with prejudice (a preclusive judgment for the defendants), the Aliver Defendants succeeded by "rebuff[ing of] the plaintiff's claims" on the merits

when this Court rejected Tinpod's attempt to secure a preliminary injunction. [DE 47] ("The Motion for P.I. is DENIED WITHOUT PREJUDICE."). As part of the preliminary injunction, Tinpod was required to establish that it was likely to succeed on the merits, e.g., Ramirez v. Collier, 595 U.S. 411, 421 (2022), and so the merits were reached in this action and directly confronted and rejected when the Court refused to enter a preliminary injunction. The Court openly questioned whether Tinpod was likely to succeed on the merits given that the Aliver Defendants raised numerous reasons why Tinpod could not: it could not show "access" to its alleged work, and Shenzhen Moulis showed *it* was the original author of the subject packaging. The Aliver Defendants rebuffed Tinpod's effort to obtain interim relief through a judicial pronouncement that the Court would not enter a preliminary injunction. [DE 47]; see also Beach Blitz Co. v. City of Elizabeth, 13 F.4th 1289, 1308 (11th Cir. 2021) (Newsome, J., concurring) (discussing decretal language in court orders).

Additionally, Tinpod's dismissal occurred just before the Aliver Defendants were about to file their renewed motion to dismiss, this time directed to the second amended complaint, which would have raised—for at least the *fourth* time—why plaintiff could not prevail given that its work was unpublished and it still did not allege how any defendants had accessed its non-public works.

Tinpod's action against the Aliver Defendants ended upon its choice to permanently stop pursuing them for the alleged infringement, doing so by way of dismissal with prejudice. [DE 129]. Its dismissal under Rule 41(a)(1) is the modern equivalent of what historically was known as a judgment of *retraxit*. Additionally, the Court entered an order thereafter, "**ADJUDG**[**ING**] that this action is **DISMISSED WITH**

**PREJUDICE**. [DE 131] (emphasis in original).

Plaintiff's action ended, permanently, with preclusive effect and without the Aliver Defendants owing plaintiff anything or being restrained whatsoever. Because Tinpod did not succeed in effectuating an enduring material change of the legal relationship with the Aliver Defendants, it lost, and the defendants won. "[Plaintiff] sued; [defendant] won; no more is required." Riviera Distribs., Inc. v. Jones, 517 F.3d 926 (7th Cir. 2008) (reversing district court's denial of fees under § 505 when the plaintiff voluntarily dismissed with prejudice under Rule 41(a)(2)). "The [Aliver] Defendants, having obtained from [Tinpod] a voluntary dismissal with prejudice, are considered prevailing parties." Mathews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. 2007); accord United Cannabis Corp. v. Pure Hemp Collective Inc., 66 F.4th 1362 (Fed. Cir. 2023) (stipulated dismissal with prejudice under Rule 41(a)(1)(A)(ii) made the defendant prevailing, despite plaintiff disputing defendant's prevailing party status as a legal consequence of its dismissal); Mostly Memories, Inc. v. For Your Ease Only, Inc., 526 F.3d 1093 (7th Cir. 2008) (there is "no question that a dismissal with prejudice makes the defendant the prevailing party"); Internet Media Interactive Corp. v. Shopify Inc., no. 20-cv-416, 2020 WL 6196292 (D. Del. Oct. 10, 2020) (defendant prevailed upon plaintiff's Rule 41(a)(1)(A)(i) notice of dismissal with prejudice).

The Aliver defendants are the prevailing parties, having received a preclusive judgment of *retraxit* after successfully opposing plaintiff's motion for preliminary injunction.

## B. The Copyright Act's purposes are served by awarding the defendants their attorney's fees

A number of non-exclusive factors "inform a court's fee-shifting decisions" in copyright cases, including 'frivolousness, motivation, objective unreasonableness[,] and

the need in particular circumstances to advance considerations of compensation and deterrence.'" Kirtsaeng, 579 U.S. at 202 (quoting Fogerty); see also InvesSys, 369 F.3d at 20 (§ 505 exists to provide an incentive which "is present whether the case happens to decide a landmark issue of copyright law or, in the end, turns on matters that have nothing to do with the statute"). "Denying a fee" award to a successful defendant "might encourage plaintiffs … to impose costs [on] defendants or to try to force them to pay settlement fees." Eclipse Sportswire v. The Sports Mall, LLC, no. 8:22-cv-1433-KMM-NHA , 2025 WL 341711 at *2 (M.D. Fla. Jan. 30, 2025) (quoting the magistrate judge's R&R). That "would be an improper use of the court system." Id. Simultaneously, if a plaintiff is "forced to risk paying a defendant's attorney's fee, future plaintiffs will scrutinize their [case] before brining suit." Id.

### 1. Degree of success

The Aliver Defendants' success was total and enduring. A defendant's complete success in defeating a plaintiff's claims "weighs in favor of an attorney fee award" though it "is not dispositive." Bisson-Dath v. Sony Computer Ent. Am. Inc., no. 08-cv-1235, 2012 WL 3025402, at *1 (N.D. Cal. July 24, 2012). Courts must also treat plaintiffs and defendants alike when they seek fees. Kirtsaeng, 579 U.S. at 204. Courts routinely award fees to plaintiffs on default judgments, e.g., Win Captial, LLC, 2022 WL 4000743 (recommending fees without any analysis of the Fogerty factors), and so default wins to defendants, such as a dismissal with prejudice, must be treated equally. Defendants are aware of no case in which a copyright plaintiff obtained a default judgment without also being awarded fees, but often, and contrary to the equality principle of Kirtsaeng, defendants are regularly denied fees on voluntary dismissals. The Court must view the

Aliver Defendants as though they were a plaintiff prevailing on a default judgment, and treat them similarly.

  *2. Frivolousness*

Tinpod's initial complaint was frivolous. It conflated unfair competition allegations with a copyright claim, knew its works were "unpublished" when it brought suit, never alleged what the law made clear it was required to allege (access), and even after being put on notice that it had to link the alleged infringement with its works as the source failed make out a prima facie claim of infringement of its unpublished works. Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994) (a "plaintiff is first required to show that the defendant had access to the plaintiff's work"). Absent "factual copying," there cannot be actionable infringement. Compulife Software Inc. v. Newman, 959 F.3d 1288, 1301-02 (11th Cir. 2020). When the Aliver Defendants moved to dismiss the first amended complaint, [DE 107], Tinpod chose not to respond to those arguments. Instead, it filed a second amended complaint including the same deficiencies. [DE 114]. While it did address the obvious defects respecting improper Lanham Act allegations, it did not allege the most glaring problem in its legal theory: access to an unpublished work. Even the Internet Archive showed, unequivocally, that the Aliver Defendants had been marketing their product long before plaintiff filed its copyright application for purported "unpublished" works. Compare [DE 30-10] (Aliver product web capture, March 22, 2023), with [DE 11 at 12-13] (certificate of registration application/effective date, November 20, 2023).

Nor did Tinpod ever amend its pleading to ensure the legally-correct person or

entity was named (and it still hasn't done so).[4] Then, when the Aliver Defendants appeared, Tinpod argued that they had no right to "intervene," predicating its baseless objection on Rule 24. The objection was clearly frivolous.

All of this shows that Tinpod's legal theories were, and remain, frivolous.

### 3. Motivation

Next, this action was not a typical copyright infringement case. It was brought as a so-called "Schedule A" case by one plaintiff against 195 online retailers. [DE 1]. Tinpod repeatedly claimed it was being harmed, but never—not once—showed or even alleged that it was selling black castor oil products or was in any way damaged. Despite that, it sought the statutory maximum for an award under 17 U.S.C. § 504(c)(2), seeking $150,000 per defendant when it had no actual evidence of either competitive harm or lost licensing revenue. See Eclipse Sportswire, 2025 WL 341711 at * 3 (finding a demand for "the maximum statutory damages available" when the plaintiff's evidence showed it had only a fraction of that in actual damages supported finding of improper motivation). Tinpod simply could not show, let alone plausibly allege, such harm—yet it unreasonably sought the full, willfully-enhanced maximum damages without adequately pleading the defendants had actual knowledge or acted in reckless disregard of plaintiff's rights. Yellow Pages Photos, Inc. v. Ziplocal, LP, 795 F.3d 1255, 1271-72 (11th Cir. 2015) (willful infringement damages requires that the defendant "knows his actions constitute an

---

[4] That violates Rule 10(a) because it does not actually name the plaintiff at all. Rule 10(a)'s "requirement is more than some procedural formality." Order unsealing filings, Doe v. Ga. Dep't of Corr., no. 24-11382, 2024 WL 5200055 at *2 (11th Cir. Dec. 23, 2024). Plaintiff continues to name "XYZ Corporation" in the caption. [DE 114 at 1]. But "fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) ("the district court correctly dismissed [plaintiff's] claim" because it "was insufficient to identify" the party).

infringement" and also "encompasses reckless disregard"); see also Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir. 2001) (finding it improper to infer willfulness even with knowledge of another's copyright because it "would turn every copyright claim into willful infringement"). Furthermore, "[s]tatutory damages are not intended to provide a plaintiff with a windfall recovery; they should bear some relationship to the actual damages suffered." Viral DRM, LLC v. EVTV Miami, Inc., no. 23-cv-22903, 2024 WL 728095 (S.D. Fla. Feb. 22, 2024). Here, plaintiff's demands were not driven by the amount of its purported actual damages (or any articulable basis in fact), but rather by simple expedient that the statute specified an upper limit, thus providing it with improper leverage to demand settlements and default judgment far beyond anything connected to the purported harm. See Harrington v. 360 ABQ LLC, no. 22-cv-00063, 2022 WL 1567094 (D.N.M. May 18, 2022) (demanding settlements "well in excess of the damages" can constitute copyright misuse and trolling).

The asserted basis of Tinpod's "right" to enjoin the purported harm, and then obtain frozen funds from hundreds of small businesses, was also predicated on what the Aliver Defendants contended was a fraudulently-procured copyright registration for works that plaintiff didn't create. No doubt most of the defendants (with the exception of the Aliver Defendants) simply caved to the plaintiff's copyright trolling scheme because doing so is less costly than to fight. Live Face, 77 F.4th at 634 (trolls "extract nuisance settlements"). That Tinpod has never clearly shown (let alone alleged) how any of the defendants obtained the alleged works, or any credible basis for its purported damages supports a conclusion that plaintiff's motivation was not premised on redress of actual harm, but rather using the judicial machinery for an improper purpose.

Tinpod's motivation in this case was purely financial, amassing as many potential defendants as it could find, suing them on a baseless claim, settling as quickly as possible with as many as possible, cutting loose the only impediment to its scheme (the Aliver Defendants), and again seeking a windfall default judgment against the non-settling defendants.

### 4. Objective unreasonableness

On the third factor, Tinpod's suit was objectively unreasonable from the start. While a claim for copyright infringement in industrial artwork is a legitimate theory of recovery, pursuing such a claim on an invalid registration, or lacking facts that could never be proven (such access) is unreasonable, and objectively so. So too is initiating an action that conflates wholly distinct legal theories of unfair competition with copyright, and forcing defendants to raise the obvious defect (as the Aliver Defendants did).

Perhaps no other illustration of the unreasonableness of Tinpod's efforts was it opposing the appearance of the only defendants who chose to put up a fight, bottoming such an objection on an entirely baseless theory of Rule 24 intervention. [DE 31]. Additionally, objecting to the defendants' proposals to simplify the case during the Rule 26(f) conference were also baseless and unreasonable, [DE 101], positions from which it retreated after the March 5, 2025, hearing, [DE 122, 123].

### 5. Compensation and deterrence

Finally, the Copyright Act is furthered by an award of fees to the defendants to deter plaintiffs, like Tinpod, from brining massive Schedule A cases on dubious theories seeking the maximum possible damages without factual support, and engaging in unreasonable litigation tactics.

Lack of due diligence respecting both the legal theories of recovery (as well as in motion practice) and as to the facts supporting those legal positions should not be encouraged, but rather *dis*couraged, so that only reasonable claims and arguments see the inside of a courtroom. Plaintiffs should be deterred from viewing copyright litigation as a risk-free endeavor, because ensuring that defendants are awarded their fees "injects risk into the [troll's] business model." Live Face, 77 F.3d at 634 (quoting Klinger v. Conan Doyle Est., Ltd., 761 F.3d 789, 792 (7th Cir. 2014)). An award to the defendants would signal to plaintiffs that if they bring an unreasonable claim, are unreasonable in their litigation tactics, are motivated not for redress of harm but rather financial gain, and are ultimately unsuccessful, then they will bear a risk of paying the defendant's attorney's fees. That strikes the proper balance while also ensuring the risk analysis is suitably timed for a plaintiff: prior to suit initiation. Indyne v. Abacus Tech. Corp., no. 11-cv-137, 2013 WL 11312471, at *11 (M.D. Fla. Dec. 2, 2013) ("defendants have an interest in being compensated for their successful defense of [an] action" and "plaintiffs must be deterred from bringing frivolous and baseless suits"). The Seventh Circuit also recognizes the importance of awarding defendants fees in their successful defense of copyright actions: "fees are proper for the defendant who rebels against" an unreasonable copyright claim, they are, in effect, "a private attorney general, combating a disreputable business practice—a form of extortion—and" the defendant seeks fees "not to obtain a reward but merely to avoid a loss." Live Face, 77 F.4th at 634. Unlike a plaintiff, a defendant "[can]not obtain an award of damages from which to pay his lawyer no matter how costly it was for him to defend against the suit." Indyne, 2013 WL 11312471, at *11. Instead, the proper allocation of a defendant's efforts is ensuring the plaintiff pays their attorney's fees when

they incautiously or carelessly invoke the judicial machinery for financial *gain* as opposed to redress for actual *harm*.

Tinpod has not paid for any legal fees, having engaged its counsel on contingency. But the Aliver Defendants have not been so lucky. Their successful and complete defense in this action came at considerable cost to them, which Tinpod should instead bear. The Copyright Act's purpose "of enriching the general public through access to creative works" is fulfilled by awarding defendants, like the Aliver Defendants, their fees because doing so "promote[s] the Copyright Act's purposes, by enhancing the probably that … defendants[] will enjoy the substantive rights the statute provides." Kirtsaeng, 579 U.S. at 205. Disallowing fees discourages defendants from "stand[ing] on their rights" in resistance to improper infringement claims, and causes them to discontinue utilizing their own marketing and branding. Id. Allowing risk-free litigation for a plaintiff like Tinpod disserves the Copyright Act's purposes.

## II.      DEFENDANTS' FEES ARE REASONABLE

### A. The lodestar calculation

To determine reasonable fees under Section 505, courts use the "lodestar" method. See Caracol Television, S.A. v. Telemundo Television Studios, LLC, no. 18-cv-23443, 2022 WL 17583608, at *8 (S.D. Fla. Aug. 4, 2022). To ascertain what constitutes a reasonable fee, courts determine a reasonable hourly rate for each of the lawyers who worked on the case and a reasonable number of hours expended by each lawyer on the case, and then multiply those figures to arrive at a "lodestar." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988).

Once the lodestar is calculated, there is a "strong presumption" that it fairly

represents "the reasonable sum the attorneys deserve." <u>Bivins v. Wrap It Up, Inc.</u>, 548 F.3d 1348, 1350 (11th Cir. 2008). "Most, if not all of the factors used to determine a reasonable fee are already subsumed in the lodestar." <u>In re Home Depot Inc.</u>, 931 F.3d 1065, 1083 & n. 17 (11th Cir. 2019). Thus, the full set of <u>Johnson</u> factors need not be addressed seriatim. "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" <u>Villano v. City of Boynton Beach</u>, 254 F.3d 1302, 1305 (11th Cir. 2001).

### B. Defendants' fees

The Aliver Defendants engaged each attorney on an hourly fee basis at a rate of $450 per hour, and with Attorney Klema providing a flat fee for some filings prepared by Attorney Li.[5] The respective rates for each item were billed according to the defendants' engagement with counsel. The following table summarizes the defendants' attorneys' rates and hours:

| Timekeeper | Hourly Rate | Hours worked | Lodestar |
|---|---|---|---|
| Griffin Klema | $450 | 57.7 | $24,950.00 |
| Di Li | $450 | 33.0 | $14,852.50 |

Not reflected in these hours is the time spent preparing this motion and fulfilling the requirements of Local Rule 7.3 and subsequent fees litigation. The defendants would be entitled to further fees respecting the fees litigation. <u>Norelus v. Denny's Inc.</u>, 628 F.3d 1270, 1301 (11th Cir. 2010) (a party may "recover the cost of establishing their right to, and the amount of attorneys' fees—the right to fees-on-fees").

---

[5] A copy of the written fee agreements of each attorney can be provided to the Court *in camera*.

1. *Reasonable hourly rate*

Plaintiff has agreed that defendants' rates are reasonable. Therefore, the remaining issue in calculating the lodestar is the hours expended.[6]

2. *The timekeepers' requested hours, and each task undertaken by the timekeeper during those hours*

Mr. Klema's hours were billed in one-tenth hour (6-minute) increments, consistent with industry practice. Ms. Li's hours were billed even more precisely, in one one-hundredths (1/100) of an hour. The total hours billed, for which a fee award is requested, are reflected in the invoices attached to the Klema and Li declarations. The specific work undertaken during those hours is also reflected in the invoices attached thereto.

3. *Lead counsel's verification.*

The undersigned certifies that he has reviewed each task, and has removed each charge for a task that is excessive, duplicative, clerical, or otherwise unreasonable. During the course of the undersigned's engagement, invoices were reviewed and adjusted, resulting in some write-offs of time and goodwill discounts totaling more than $3,600.00. The above fees do not include these non-billed time entries.

**CONCLUSION**

The Copyright Act is furthered by awarding fees to successful defendants who completely resist a plaintiff's efforts to obtain preliminary injunctive relief and money damages, especially when sought through an unreasonable claim. The Aliver Defendants'

---

[6] Consequently, the following matters are not in dispute: the timekeepers' identity, experience, and qualifications, as well as their requested rates. L.R. 7.3(a)(5)(A) and (D).

objectives were to avoid paying plaintiff anything, avoid a preliminary injunction, and continue to engage in the alleged conduct plaintiff claimed was infringing. They fully succeeded, are the prevailing parties, and ought to be awarded their reasonable attorney's fees.

**WHEREFORE**, the eighteen Aliver Defendants, DE 42, respectfully request the Court:

a) grant this motion;

b) conclude they are the prevailing parties for having fully resisted plaintiff's efforts to obtain both interim (preliminary injunction) and final (money damages and permanent injunction) relief;

c) conclude that awarding them their attorney's fees furthers the goals of the Copyright Act;

d) hold that they are entitled to their reasonable attorney's fees pursuant to § 505 of the Copyright Act;

e) find that the amount of their attorney's fees is reasonable;

f) enter an order awarding them their attorney's fees in the amount of $39,802.50;

g) enter a judgment awarding the defendants the above fees, plus a supplemental amount to be determined respecting the time spent on the instant motion and post-dismissal fees proceedings; and

h) for such further relief as the Court deems just and proper.

  /s/ Griffin Klema
Griffin C. Klema, Esq.
Fla. Bar No. 100279

Griffin@KlemaLaw.com
**Klema Law, P.L.**
PO Box 172381
Tampa, FL 33672
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
*Attorney for the Aliver Defendants, DE 42*

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), the Aliver Defendants request a hearing on this motion because, so far as defendants are aware, the issue of their prevailing party status raises a question of first impression in the Eleventh Circuit, as well as how the Court should apply existing law post-<u>Lackey</u>. Accordingly, the defendants believe the Court would benefit from oral argument so that they may articulate how this case differs from prior decisions and address questions the Court may have.

## LOCAL RULE 7.3(a)(7) VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct. Executed on May 20, 2025.

__/s/ Griffin Klema_____
Griffin C. Klema, Esq.

## LOCAL RULE 7.3(a)(8) CONFERRAL CERTIFICATION

I certify that a good faith effort to resolve issues by agreement occurred pursuant to Local Rule 7.3(b), and that the sole matter that was resolved was defense counsel's reasonable hourly rate. No other issues could be resolved.

__/s/ Griffin Klema_____
Griffin C. Klema, Esq.

**LOCAL RULE 7.3(b) CERTIFICATE OF SERVICE OF DRAFT MOTION**

I hereby certify that a true and correct copy of a draft of this motion, supporting memorandum of law, and supporting declarations were served by email, pursuant to Fed. R. Civ. P. 5(b)(2) and Local Rules 5.1(e), 5.2(a) and 7.3(b) on April 29, 2025, on all counsel or parties of record on the Service List below.

    /s/ Griffin Klema
Griffin C. Klema, Esq.

**Service List**

Michael Feldenkrais, Esq.
Florida Bar No. 991708
mfeldenkrais@gmail.com
eservice@feldenkraislawpa.com
**FELDENKRAIS LAW, P.A.**
20533 Biscayne Blvd. Suite 469
Aventura, FL 33180
Telephone: (305) 528-9614

*Attorneys for Plaintiff*

Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
**KLEMA LAW, P.L.**
420 W. Kennedy Boulevard
Second Floor
Tampa, FL 33606
Telephone: 202-713-5292

Di Li, Esq.
**DI LI LAW, P.C.**
18725 Gale Ave., Suite 208
City of Industry, CA 91748
Telephone: (626) 723-4849
Fax: (626) 956-0744
di@dililaw.com

*Attorneys for the Aliver Defendants, DE 42*

## LOCAL RULE 7.3 CROSS-REFERENCE LIST

Pursuant to Local Rule 7.3(a) the following are included in the foregoing memorandum of law and/or supporting documents, and specifically noted:

1. **Be filed within 60 days of the judgment or order giving rise to the fees claim:** The order of dismissal was entered March 28, 2025. [DE 131]. Sixty days from that date is Tuesday, May 27, 2025.

2. **Identify the judgment or order which gives rise to the motion and the statute, rule, or other grounds of entitlement**: (a) notice of voluntary dismissal with prejudice [DE 129]; and (b) order of dismissal with prejudice [DE 131]. The Copyright Act, 17 U.S.C. § 505, and Rule 54.

3. **State the amount sought**: $39,802.50, plus fees respecting post-judgment litigation.

4. **Disclose the terms of any applicable fee agreement**: *supra*, Section II.B.

5. **Provide:**

   a. **the identity, experience, and qualifications for each timekeeper for whom fees are sought:** Plaintiff agreed to defense counsel's rate of $450; <u>see also</u> supporting declarations of Klema and Li.

   b. **the number of hours reasonably expended by each such timekeeper:** 57.7 (Klema), 33.0 (Li), totaling 90.7 hours.

   c. **a description of the tasks done during those hours:** Defense counsels' declarations and timesheets attached thereto.

   d. **the hourly rate(s) claimed for each such timekeeper**: Plaintiff agreed to defense counsel's rate of $450; <u>see also</u> supporting declarations of Klema and Li.

6. **Describe and document, with invoices, all incurred and claimed fees and expenses not taxable under 28 U.S.C. § 1920**: *supra*, Section II.B and defense counsels' declarations.

7. **Verification**: *supra*.

8. **Good faith certification**: *supra*.